Peebles v. Green.·

6L 471
12L 79
3pi 177
4pi 579

LUCY A. PEEBLES et al. v. A. P. GREEN et al.

4. LIMITATIONS.  Trusts.  Where it is a technical trust of which a court of equity has exclusive jurisdiction, the statute does not apply, but in a case where courts of law and equity have concurrent jurisdiction, the statute applies.

2. SAME.  When the statute may be pleaded.  The fact that the transaction involves elements of trust will not defeat the statute—as where tolls are converted by ͺa gate-keeper; the conversion of a deposit; or the conversion by an. agent of money entrusted to him for a particular purpose, and like cases.

3. SUPREME COURT PRACTICE.  Part of the transcript missing.  Presumption.. If a part of the transcript is missing, and the parties go to trial in the supreme court without any step to supply the missing part, the court will presume the part missing is not material; and it will not be presumed that if the part missing were in the transcript it would sustain the decree of the chancellor.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

J. L. Rice for complainants.

Demoss & Malone for defendants.

McFarland, J., delivered the opinion of the court.

This is an attachment bill filed by Peebles and wife, citizens of Texas, against A. P. Green, a resident of California, to attach his interest as legatee and devisee in the estate of Alexander M. Porter, deceased, situated in this State, for the satisfaction of an indebtedness which is stated in the bill as follows: "And your orators would further show that the said Alexander P. Green is indebted to her (meaning complainant, Lucy P. Peebles), twenty-five hundred dollars, money, with interest from June, 1854, when it was advanced him to invest, and which he failed to do, and the same now remains unpaid."

The facts in regard to the claim, as shown by the answer and proof, are as follows: In 1854, a firm existed in New Orleans under the style of Siddall, Green & Co., of which said A. P. Green and John O. McGhee were members. The firm had borrowed from Lucy A. Trigg (now Lucy A. Peebles) $5,000, at eight per cent. interest, and about that time failed, but by consent McGhee, who was the brother-in-law of Lucy A. Trigg, took out $5,000 to pay Miss Trigg's debt. McGhee handed the money to Green, with directions to invest or loan it for Miss Trigg on·real estate security. Green, although he had an opportunity to loan the money upon the security specified, declined to do so, · but loaned it to one A. J. Coffee, and took

a mortgage upon personal property, consisting of three carriage horses, etc., and three slaves, and Coffee soon after removed to California.  McGhee, who had been absent, returned to New Orleans in the fall of 1854. He had, however, in the mean time been informed of what had been done, and had repudiated the transacaction.  The mortgage was, by agrement between him and Green, cancelled.  McGhee, however, received of the proceeds of the property between $2,500 and $3,000 from Green, who had sold it.  Green also removed to California, promising, as McGhee proves, to pay the remainder of the money, or to collect it for the complainant from Coffee, and forward it to her.  These transactions were completed as early as November, 1854, and there is no distinct proof of a promise upon the part of Green, or a recognition of his liability subsequent to that date.  McGhee has an impression that he received a letter from Green, promising to pay the debt in 1855, but his testimony on this point is too indistinct to establish the fact.  No steps were taken or proceedings instituted until the filing of this bill on the 13th June, 1866.  Miss Trigg, at the time of these transactions, resided in New Orleans, but is not shown to have taken any part in the negotiations herself.  The bill, however, adopts the acts of McGhee in her behalf, and is filed to enforce her rights growing out of these transactions.

The defendant, in his answer, relies upon the statute of limitations, and we have not been able to find any successful answer to this defense.  It is not, as argued, the statutes of Louisiana that apply, but the statutes

of this State, the law of the State where the action is brought governs as to the limitation of the action: *Ester* v. *Kyle*, Meigs, 84; *Gassaway* v. *Hopkins*, 1 Head, 583. But, as we have seen, the transaction was complete as early as November, 1854, and the bill was not filed until 1866, and there being no allegation or proof of a subsequent promise, or that the complainant was within any of the exceptions to the statute under the law as it then stood in this State, it must follow that the action is barred, sufficient time having elapsed for the purpose, excluding the period during the war—provided the same limitation applies that would have been applicable to the appropriate action at law upon the same facts. Six years was the longest period allowed for bringing such action, putting it in the most favorable aspect for the complainant.

It is true the bill does not put the claim upon the original indebtedness of the firm of Siddall, Green & Co. to Miss Trigg, but upon the allegation that the money was placed in the hands of Green to invest, and that he failed to do so or to repay the amount. But if we concede that this constituted Green a trustee, it is settled by our reported cases that it was not such a trust as to give courts of equity exclusive jurisdiction, and thereby avoid the statute of limitations.

Where it is a technical trust, of which a court of equity has exclusive jurisdiction, the statute of limitations does not apply; but in a case where courts of law and equity have concurrent jurisdiction, the statute applies with as much vigor in the one court as the

other: *Armstrong* v. *Campbell*, 3 Yer., 201; *Cooke* v. *McGinnis*, Martin & Yerger, 361; *Nicholson* v. *Lauderdale*, 3 Hum., 200. This rule applies in cases of loans, deposits, bailments, powers, etc., although such cases involve elements of trust, as where one acts as the agent of another to sell land or receive money, or acts as gate-keeper and receive tolls on a turnpike road: See last two cases above cited. There can be no doubt upon the facts stated in the bill, as shown in the record, that an action at law accrued at least as early as November, 1854, and might have been brought. In fact the bill treats it as a debt. It was simply a conversion of the money by Green. No account of any trusts is prayed for, and none could have been; no relief could have been predicated upon the mortgage executed by Coffee, as the bill and the proof show distinctly that complainant repudiated and refused to claim under it.

In the case of *John Williams, Adm'r, etc.,* v. *W. D. Williams,* decided at Knoxville within the last year or two and not reported, it appeared that Judge Williams had intrusted to his nephew, W. D. Williams, a sum of money to loan, with specific instructions as to the security to be taken. W. D. Williams violated the instructions and loaned upon a different security, and the debt was eventually lost. Upon a bill subsequently filed to hold W. D. Williams liable for the debt, we held the relief barred by the statute of limitations, it not having been brought within the period fixed by the statute. The present case we think similar in principle.

Peebles *v.* Green.

It is suggested on behalf of the complainants, that the record shows that certain evidence used on the trial below is not in the transcript, and we must, therefore, presume that the evidence thus omitted was sufficient to sustain the chancellor's decree. On the contrary, as neither party has suggested a diminution of the record, or taken steps to supply the missing evidence, we must take it that they do not regard the missing evidence as material, and that the record contained all the material testimony in the cause. We think the case of *Seay & Shepherd* v. *Hughes,* 5 Sneed, 155, referred to, not in point.

The only mode in which it is suggested that the missing evidence could support the decree of the chancellor, is, that it might prove a new promise by the defendant. But the missing evidence is part of the deposition of J. O. McGhee and a letter from A. J. Coffee. The latter clearly could not prove such promise, and the testimony of McGhee on the question of new promise is in the record.

The decree of the chancellor will be reversed and the bill dismissed with costs.